# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

LACEY MARK SIVAK,

                   Petitioner,

     v.

JAY CHRISTENSEN,[1]

                  Respondent.

Case No. 1:16-cv-00189-BLW

**MEMORANDUM DECISION AND ORDER**

On October 3, 2016, the Court dismissed numerous claims in the instant Petition for Writ of Habeas Corpus, filed by Petitioner Lacy Mark Sivak ("Petitioner" or "Sivak"), because the claims (1) were guilt-phase claims and thus were barred as second or successive pursuant to 28 U.S.C. § 2244(b), (2) challenged Petitioner's previously-vacated death sentence, (3) were civil rights claims that could not be asserted in federal habeas but must be brought, if at all, in an action under 42 U.S.C. § 1983, or (4) did not constitute a cognizable, freestanding federal claim. (*See* Successive Review Order, Dkt. 13, at 9 n.3, 12-14.) At that point, the only claims remaining in this case were those that challenged Petitioner's fixed life sentence, which was imposed following a resentencing hearing:

> Petitioner may proceed on the following Claims, but *only* to the extent they challenge Petitioner's life sentence: Claim

---

[1]     Respondent Jay Christensen, the warden of the Idaho State Correctional Center, is substituted for Howard Yordy, the warden of Petitioner's former facility, the Idaho State Correctional Institution. *See* Fed. R. Civ. P. 25(d); *see also* Dkt. 100.

8(b) through (f); Claim 14; Claim 18(b); Claim 19; Claim 20;
Claim 22; Claim 23; Claim 24; Claim 26(b); Claim 29(b);
Claim 30; Claim 33(a) through (c) and (g) through (j); and
Claim 35.

(*Id*. at 14.)

On August 29, 2017, the Court conditionally granted Respondent's Motion for

Summary Dismissal of these resentencing claims, preliminarily concluding that the

Petition appeared barred by the statute of limitations and that the resentencing claims

were procedurally defaulted. (Dkt. 82.) The Court gave Petitioner an opportunity to file a

supplemental response addressing the Court's analysis. (*Id*. at 2, 14, 17-19.) Petitioner

has done so. (Dkt. 84.) Petitioner has also filed several motions, one of which asks that

the Court reconsider its previous dismissal of Petitioner's guilt-phase claims. (Dkt. 83,

88, 91, 96, 101, 110.)

The Court finds that the parties have adequately presented the facts and legal

arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L.

Civ. R. 7.1(d). Therefore, Petitioner's Motion for Hearing (Dkt. 88) will be denied.

Having carefully reviewed the record, including the state court record, the Court

has reconsidered its previous dismissal of Petitioner's guilt-phase claims and determined

that they are not subject to the successive petitions bar. Accordingly, Respondent will be

instructed to respond to those claims.

As for Petitioner's claims challenging his life sentence, imposed upon

resentencing, the Court is persuaded by Petitioner's new evidence of timeliness and

concludes that the claims are not barred by the statute of limitation. However, the Court

reaffirms its previous conclusion that Petitioner's resentencing claims are subject to dismissal as procedurally defaulted. Because Petitioner has not shown an adequate excuse for the default, his resentencing claims will be dismissed.

1.     **Petitioner Will Be Allowed to Proceed on His Guilt-Phase Claims**

Because a new judgment of conviction was entered following Petitioner's resentencing,[2] the Court's previous dismissal of Petitioner's guilt-phase claims—under the unauthorized second or successive claim rule of § 2244(b)—was incorrect under Ninth Circuit precedent. *See Wentzell v. Neven*, 674 F.3d 1124, 1127 (9th Cir. 2012) ("[W]here a first habeas petition results in an amended judgment, a subsequent petition is not successive, even if its claims could have been raised in a prior petition or the petitioner effectively challenges an unamended component of the judgment.") (internal quotation marks omitted). Therefore, Petitioner's Motion to Allow Other Issues Previously Denied to Proceed (Dkt. 101) will be granted. However, such claims may later be subject to dismissal based on procedural defenses, such as procedural default or res judicata. *See id.* ("[P]rocedural default rules—rather than the rules governing 'second or successive' petitions—are the more appropriate tools for sorting out new claims from the old.").

2.     **The Petition Is Timely**

Petitioner has provided evidence that, contrary to Respondent's and the Court's previous belief, Petitioner *did* file a petition for writ of certiorari with the United States

---

[2]     The new judgment of conviction, for felony first-degree murder and possession of a firearm during the commission of a felony, was entered on August 28, 2013. (State's Lodging Q-3 at 529-30.)

Supreme Court following the Idaho appellate courts' affirmance of his fixed life sentence. (*See* Dkt. 84 at 8.) Therefore, the statute of limitations for Petitioner's federal habeas petition did not begin to run until that petition for writ of certiorari was denied. Petitioner has demonstrated that the claims in his Petition are timely, and Respondent has conceded that issue.[3] (Dkt. 87 at 2-3.)

3.      **Petitioner's Claims Challenging His Life Sentence, Imposed upon Resentencing, Are Procedurally Defaulted without Adequate Excuse**

Even though Petitioner's resentencing claims are timely, the Court must still consider whether they are subject to summary dismissal as procedurally defaulted. The Court previously analyzed the issue as follows:

> The most straightforward manner in which to resolve the exhaustion and procedural default status of Petitioner's federal claims is to review which claims were raised and

---

[3]     The Court finds that—contrary to Petitioner's baseless assertions—Respondent did not lie or otherwise mislead this Court in initially asserting that the Petition was time-barred or in later stating (correctly) that (1) the Petition did not refer to the petition for writ of certiorari filed by Petitioner following the Idaho court's affirmance of his life sentence, or that (2) Petitioner did not previously mention filing a certiorari petition. In accusing Respondent of lying, Petitioner cites an attachment to his Petition referring to a certiorari petition. However, the Petition itself does not refer to any such petition. And although the attachments to the Petition should have been served upon Respondent, the Court erroneously neglected to do so. That was a simple mistake, and Respondent reasonably believed that no certiorari petition had been filed.

The Court also reasonably held that belief. The Court was not required to meticulously search through the many documents Petitioner submitted with his Petition. Instead, it was entitled to rely on the habeas Petition itself to contain all of the information necessary to adjudicate that Petition. *See* Rule 2(c) & (d) of the Rules Governing Section 2254 Cases; *see also Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988) ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment... If a party wishes the court to consider [certain evidence], the party should bring that desire to the attention of the court."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs."). Petitioner's own failure to cite to his United States Supreme Court proceedings in the Petition itself is what caused the misunderstanding—not any nefarious intent on the part of Respondent or the Court.

Respondent also did nothing wrong by referring to Petitioner's case as a noncapital case. Although Petitioner initially was sentenced to death, that sentence was vacated, and Petitioner has been resentenced to life imprisonment. Therefore, Petitioner's case is no longer a death penalty case.

For these reasons, Petitioner's Motion to Sanction Respondent's Counsel (Dkt. 91) will be denied as frivolous.

addressed on the merits in the state court appellate proceedings. On direct appeal from the imposition of his life sentence, Petitioner argued only that the sentencing judge abused his discretion, under Idaho state law, by sentencing Petitioner to life in prison without the possibility of parole and by denying Petitioner's Rule 35 motion. (State's Lodging R-1.)

Petitioner raised no federal claims on direct appeal of his fixed life sentence, and he did not pursue any other appeal involving that sentence. Therefore, none of the claims in the Petition is exhausted. Further, because it is now too late for Petitioner to exhaust those claims, they appear to be procedurally defaulted. *See Gray [v. Netherland]*, 518 U.S. [152,] 161-62 [(1996)]; *see also* Idaho Code § 19-4902 ("An application may be filed at any time within one (1) year from the expiration of the time for appeal or from the determination of an appeal or from the determination of a proceeding following an appeal, whichever is later."); Idaho Code § 19-4908 ("All grounds for relief available to an applicant under this act must be raised in his original, supplemental or amended application.").

(Dkt. 82 at 16-17 (footnote omitted).) The Court instructed Petitioner to set forth any reason why the claims should not be dismissed as procedurally defaulted, including with respect to the issues of actual innocence and cause and prejudice.

Petitioner now argues that (1) his resentencing claims are not procedurally defaulted because he fairly presented them to the Idaho Supreme Court in his pro se filings, and (2) even if the claims are defaulted, actual innocence excuses that default.

A. **Petitioner's Pro Se Documents Filed with the Idaho Appellate Courts Did Not Fairly Present His Resentencing Claims**

Petitioner first challenges the Court's previous determination that his resentencing claims are procedurally defaulted. Petitioner argues that he did, in fact, fairly present his resentencing claims to the Idaho appellate courts—through his submission of pro se

filings—but the state courts refused to consider those pro se arguments because Petitioner was represented by counsel. (Dkt. 84 at 10-12.) This amounts to an argument that, pursuant to the Eighth Circuit's decision in *Clemmons v. Delo*, 124 F.3d 944 (8th Cir. 1997), Petitioner did all that he could do to present those claims to the state appellate courts.

The petitioner in *Clemmons* initially raised a *Brady* claim in his state post-conviction petition, but his appellate post-conviction counsel did not raise that claim on appeal. Counsel omitted the claim from the appellate briefing despite the fact that the petitioner "specifically stated [to his attorney] that he wanted all of his issues preserved" and that the petitioner—after the brief was filed without including all of Clemmons's issues—instructed counsel to file a supplemental brief. 124 F.3d at 948. The petitioner also expressly notified counsel that "issues not raised would later be held not to have been properly presented." *Id.* Counsel responded that the decision on which claims to raise was correct, stating that he had "made every argument on [the petitioner's] behalf that [he] felt could be supported by law and evidence." *Id.* Clemmons then filed a motion with the Missouri Supreme Court, asking that he be allowed to file a supplemental pro se brief and informing the court that counsel's brief did not include all the claims the petitioner had requested. The court denied the motion.

In federal habeas proceedings, Clemmons asserted the *Brady* claim. He then faced an argument that the claim was procedurally defaulted because it had not been fairly presented to the highest state court. The Eighth Circuit held that Clemmons had fairly presented the issue, despite counsel's failure to include it in counsel's brief, because

Clemmons "did the only thing he could do: he tried to bring the issue to the attention of the Missouri Supreme Court himself." *Id.* Because there was nothing more he could have done "as a practical matter" to present that claim, the claim was not procedurally defaulted. *Id.* at 948-49; *see also Veenstra v. Smith*, No. 1:11-cv-00632-BLW, 2014 WL 1270626, at *16 (D. Idaho Mar. 26, 2014) ("[T]o fairly present claims in a circumstance where the petitioner disagrees with counsel's narrowing of claims, a petitioner must take steps on his own, such as seeking leave of court to introduce a supplemental pro se filing containing the additional claims counsel refused to present."). Importantly, the state court in *Clemmons* did not have a regularly-applied rule regarding pro se briefs filed by represented litigants:

> No rule of court or reported Missouri case of which we are aware specifies the circumstances under which Missouri appellate courts allow pro se briefs. A state procedural rule must be regularly adhered to if it is to be an adequate state ground supporting a procedural bar. Sometimes Missouri courts allow pro se briefs, and sometimes they do not. That is their prerogative. But *in the absence of regularly applied criteria, the decision not to allow such a brief cannot be said to rest on a regularly applied rule of state procedural law.*

124 F.3d at 956 (internal citation omitted).

The Eighth Circuit has since emphasized the narrow application of *Clemmons*. In *Oglesby v. Bowersox*, that court held that the *Clemmons* principle, though applicable in certain "unique circumstances," does not apply if the petitioner's "claim was defaulted pursuant to an independent and adequate state procedural rule that is firmly established and regularly followed." 592 F.3d 922, 925 (8th Cir. 2010).

The Ninth Circuit has also distinguished *Clemmons. See Custer v. Hill*, 378 F.3d 968 (9th Cir. 2004). In *Custer*, the petitioner's attorney did not raise an ineffective assistance of counsel claim in the petition for review in the Oregon Supreme Court, which was required for proper exhaustion. *Id*. at 974. In federal habeas proceedings, Custer relied on *Clemmons* in arguing that he fairly presented his ineffectiveness claim to the state's highest court by "request[ing] and receiv[ing] permission from the Oregon Court of Appeals [the intermediate court of appeals] to file a *pro se* brief" asserting that claim. *Id.* at 974-75.

The Ninth Circuit, however, rejected Custer's argument that his action during post-conviction appellate proceedings fairly presented the claim to the Oregon Supreme Court. Although Custer "did take personal action to bring the ineffective assistance of counsel claim to the attention of the *Oregon Court of Appeals* by requesting to file a pro se brief ... he did not take similar action with regard to the *Oregon Supreme Court*, the court in which the issue must be raised to be preserved." *Id.* at 975 (emphasis added). Because Custer did not attempt to raise the issue in the highest state court, that claim was not fairly presented and was procedurally defaulted.

Petitioner argues that his resentencing claims should be heard on the merits because, like the petitioner in *Clemmons*, he did everything he could to bring those claims to the attention of the Idaho appellate courts. However, a review of the record proves otherwise.

In Petitioner's appeal of his fixed life sentence and while represented by counsel, he filed several pro se documents prior to the deadline for filing the opening brief. On

August 8, 2014, Petitioner filed a "Notice of Change of Counsel for Defense," in which he complained (1) that the State Appellate Public Defender's Office "do[es] not challenge all issues," (2) that Petitioner's attorney would not communicate with him, and (3) that his attorney would "only address some of the issues." (State's Lodging R-9 at 2-3 (emphasis in original).)

On August 12, 2014, Petitioner filed two additional pro se documents with the appellate court. In his "Motion and Order to Provide [Petitioner] with All Court Files/Case Records," Petitioner asked to be provided with his legal files because he "ha[d] given notice to remove the State Appellate Public Defender ... from this case, and, put [Petitioner] on." (State's Lodging R-10 at 1.) In Petitioner's "Motion and Order to Dis-Allow Barristers ... from: 1. Any Employment with Any State Entity [and] 2. Any Disclosure of Any Gleaned Information in Their Judicial Capacity," Petitioner again appeared to express a desire to replace his attorney. (State's Lodging R-11.)

Petitioner's attorney received a copy of Petitioner's pro se filings and later moved the appellate court for an extension of time to file the opening brief. On August 14, 2014, the attorney stated in his motion that, from Petitioner's filings, it appeared Petitioner was dissatisfied with his legal representation, but it "was unclear whether [Petitioner] wished to proceed pro se." (State's Lodging R-12 at 2.) The attorney also stated that he had not received a telephone call from Petitioner since July 7, 2014, and he had not received a letter from Petitioner since July 14, 2017. (*Id*.) After receiving the pro se filings, Petitioner's counsel "had a lengthy prison visit with [Petitioner] ... in order to discuss his case and his options on how to proceed." (*Id*. at 3.)

Counsel sought the extension of time to file the opening brief because, even after that lengthy visit with Petitioner, counsel "was not comfortable filing the brief as it now stands until I have additional time to consult further with [Petitioner] about the issues to be raised in his appeal and his apparent desire to represent himself on appeal." (*Id.*) The appellate court granted the requested extension and stated that it would take no action on Petitioner's pro se filings. (State's Lodging R-13, R-14.)

Petitioner's counsel later filed the opening appellate brief, raising only state-law claims. (State's Lodging R-1.) The opening brief raised none of Petitioner's current resentencing claims.

For the following reasons, the Court concludes that Petitioner's pro se documents, filed on appeal from the resentencing hearing, did not fairly present to the state courts any of the resentencing claims included in his federal Petition.

First, the principle established in *Clemmons* does not apply when the state court has a "regularly applied rule of state procedural law" that bars represented litigants from filing pro se briefs. *Clemmons*, 124 F.3d at 956; *see also Oglesby*, 592 F.3d at 925 ("*Clemmons* does not apply in this case, because here the procedural rule invoked by the court of appeals was the regularly-applied time limits in Rule 29.15(g)."). Idaho courts have a consistent and longstanding rule permitting courts to ignore pro se filings when the filing party is represented by counsel. *See, e.g., Johnson v. State*, No. 38425, 2012 WL 9490829, at *2 (Idaho Ct. App. Feb. 3, 2012) ("[I]t was within the discretion of the trial court to require all documents to be filed by Johnson's legal representative."); *Musgrove v. State*, Case No. 37407, 2011 WL 11037672, at *1 (Idaho Ct. App. May 16,

2011) (noting that "the district court ... ordered Musgrove to refrain from filing additional documents pro se because he was represented by counsel."); *State v. Brink*, Case No. 34391, 2008 WL 9471256, at *8 (Idaho Ct. App. Nov. 7, 2008) (noting that the district court refused to accept pro se filings from represented defendant and holding that the refusal did not violate defendant's constitutional rights). Respondent has sufficiently invoked the state courts' procedural rule against pro se filings by represented parties, and Petitioner has not "assert[ed] specific factual allegations that demonstrate the inadequacy" of that rule, such as "citation to authority demonstrating inconsistent application of the rule." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).

Petitioners in state appellate matters have two choices in Idaho. Either they choose to be represented by counsel, or they choose to ask counsel to withdraw so that they can proceed pro se. A petitioner cannot have it both ways under Idaho's rule. The Idaho courts are entitled to create rules that aid them in the orderly administration of cases, and this is one such rule. *Cf. McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (holding that the Sixth Amendment does not entitle a criminal defendant to "hybrid" representation—that is, a defendant does not have the right to represent himself *and* to have the assistance of counsel).

That the Idaho appellate court *could* have exercised its discretion to consider Petitioner's pro se filings does not render inconsistent or otherwise inadequate Idaho's procedural rule barring pro se documents filed by parties who are represented by counsel. *See Walker v. Martin*, 562 U.S. 307, 318 (2011) (holding that a state court's "use of an imprecise standard ... is no justification for depriving a [procedural] rule's language of

MEMORANDUM DECISION AND ORDER - 11

any meaning") (internal quotation marks and alteration omitted); *Beard v. Kindler*, 558 U.S. 53, 61 (2009) (holding that a state procedural bar can be considered adequate even if it is a discretionary rule and even though "the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others"). Similarly, that Idaho's rule against pro se filings by represented parties may be based on case law does not negate its adequacy. *See, e.g., Emery v. Johnson*, 139 F.3d 191, 201 (5th Cir. 1997) ("Emery has not demonstrated that Texas failed to apply its common-law abuse-of-the-writ doctrine with sufficient strictness and regularity to render it an adequate state ground as of the time of Emery's procedural default."); *Hill v. Jones*, 81 F.3d 1015, 1024 (11th Cir. 1996) ("On several occasions we have upheld procedural defaults based on Alabama's common law successive petition rule."). Idaho's bar on pro se filings by represented parties is a "regularly applied rule of state procedural law," and, therefore, *Clemmons* is inapplicable. *Clemmons*, 124 F.3d at 956.

Second, even were the Court to disregard the Idaho appellate courts' rule against dual self-representation and attorney representation, Petitioner has not established that his appellate counsel *in fact* failed to raise any issues that Petitioner decided he wanted raised. The attorney filed an opening brief raising two issues, presumably after consulting with Petitioner as counsel's motion for extension of time stated that he would. There is no evidence Petitioner raised any further objections or filed any additional pro se documents indicating that he was unhappy with the issues raised in counsel's brief or that counsel's brief was incomplete or otherwise contradictory to what Petitioner wanted argued. In the absence of such evidence, the Court will not presume that Petitioner's attorney failed to

include issues requested by Petitioner. *See McKaskle*, 465 U.S. at 183 ("Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced."). Instead, it is more likely that Petitioner decided, after consulting with his attorney, to refrain from representing himself and to accept counsel's advice with respect to the issues to be raised on appeal.

Finally, even if the Court were to consider Petitioner's pro se documents filed with the Idaho appellate courts as supplemental briefing that raised the specter of other issues that Petitioner wanted raised, those documents "did not 'call[] the attention of the [Idaho] Supreme Court' to *the particular federal claims* that he wished to put before it." *Nelson v. Blades*, No. CV 04-001-S-LMB, 2009 WL 790172, at *8 (D. Idaho Mar. 23, 2009) (emphasis added) (quoting *Clemmons*, 124 F.3d at 948). Rather, Petitioner vaguely discussed unspecified "issues" without actually identifying any such issues. (State's Lodging R-9 at 2-3.) These generalized statements did not serve to fairly present any of Petitioner's resentencing claims; the state appellate court "had no obligation to wade through lower court filings in search of potential federal issues that Petitioner may or may not have intended to include" in his pro se documents. *Nelson*, 2009 WL 790172, at *8 (citing *Baldwin v. Reese,* 541 U.S. 27, 32 (2004)).

For the foregoing reasons, Petitioner's resentencing claims cannot be deemed fairly presented under *Clemmons v. Delo*. Thus, the Court's preliminary procedural default determination remains unchanged.

**MEMORANDUM DECISION AND ORDER - 13**

**B.**  **Petitioner Has Not Established Actual Innocence to Excuse the Default of His Resentencing Claims**

Because Petitioner's resentencing claims are procedurally defaulted, they must be dismissed unless Petitioner can establish cause and prejudice, or actual innocence, to excuse that default. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Schlup v. Delo*, 513 U.S. 298, 329 (1995); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Though Petitioner does not argue cause and prejudice as an excuse for the default, he does assert that he is actually innocent.

Specifically, Petitioner argues that his resentencing claims can be heard despite their default because he "has shown actual innocence through double jeopardy." (Dkt. 84 at 9.) Petitioner was prosecuted on two alternate theories: (1) first-degree premeditated murder and (2) felony murder. The jury acquitted Petitioner of premeditated murder but convicted him of felony murder. Petitioner asserts that, because he was acquitted of premeditated murder, he could not have been sentenced for felony murder. Therefore, argues Petitioner, he is actually innocent of his fixed life sentence. (*Id.* ("When the jury acquitted on Count Two, it was a bar to all other murders ....").)

This argument fails for several reasons. First, although the actual innocence exception applies in the *capital* sentencing context, neither the Supreme Court nor the Ninth Circuit has determined whether that exception applies to noncapital sentences such as Petitioner's. *See Dretke v. Haley,* 541 U.S. 386, 393-94 (2004) ("We are asked in the present case to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. We decline to answer the

question in the posture of this case ...."); *Marrero v. Ives*, 682 F.3d 1190, 1195 (9th Cir. 2012) (declining to consider whether a petitioner can "assert a cognizable claim of actual innocence of a noncapital sentencing enhancement," for purposes of the escape hatch rule of §§ 2241 and 2255, because the petitioner did not qualify for any such exception even if it did exist).

This Court agrees with the decision of those courts that have addressed the issue and held that "[a] person cannot be actually innocent of a noncapital sentence." *United States v. Richards*, 5 F.3d 1369, 1371 (10th Cir. 1993). As explained by the Eighth Circuit, "actual innocence" of such a sentence would simply be a means to "resuscitate [a] legal claim that [the petitioner] was wrongly convicted and sentenced." *Embrey v. Hershberger*, 131 F.3d 739, 741 (8th Cir. 1997). If a petitioner could bring such a claim, "then every sentence would be subject to an endless number of successive reviews." *Id.*

Second, even if the actual innocence exception did apply in the noncapital sentencing context, Petitioner would have to establish that he was ineligible for a fixed life sentence under Idaho law. *See Sawyer v. Whitley*, 505 U.S. 333, 348 (1992) (death penalty context). In other words, Petitioner would have to show that his sentence was not within that permitted by the statute under which he was convicted. However, Idaho law specifically allows for a fixed life sentence for murder—whether that murder was premeditated or occurred during the commission of a felony. Idaho Code §§ 18-4001, 18-4003, 18-4004.

Third, Petitioner has not shown "factual innocence"—that is, he has not shown that he did not commit felony murder. *Bousley v. United States,* 523 U.S. 614, 623

(1998). Legal innocence or insufficiency, such as that involved with a double jeopardy violation, is not enough for application of the actual innocence exception. *Id.*; *see also Brown v. Smith*, No. 1:12-cv-00112-REB, 2013 WL 149357, at *5 (D. Idaho Jan. 14, 2013) ("Petitioner argues only that a miscarriage of justice will occur if his sentence is allowed to stand because of the double jeopardy violation that arose when he was sentenced on both the aggravated battery and the weapon enhancement. This is a legal sufficiency argument, not an actual innocence argument ....").

Finally, Petitioner cannot establish any double jeopardy violation with respect to his fixed life sentence. The Ninth Circuit has already rejected a double jeopardy claim with respect to Petitioner's felony murder conviction in the context of his now-vacated death sentence:

> Sivak was charged with two separate counts of first-degree murder. Count two of the Information charged that he murdered Wilson "willfully, unlawfully, deliberately, with premeditation and with malice aforethought." Count three charged him with murdering Wilson "in the perpetration of a robbery." The jury found Sivak guilty on count three (felony murder) but not count two (premeditated murder).
>
> We reject Sivak's argument that these verdicts conclusively establish that he did not personally stab and shoot Wilson. Sivak is correct that it is *possible* that the jury concluded that Bainbridge [Petitioner's co-defendant, who was tried separately] used the murder weapons. However, we cannot agree that the jury "necessarily decided" whether Sivak or Bainbridge was the killer. *Yeager,* 129 S. Ct. at 2366. We have previously rejected a similar argument, using language directly applicable to this case: although the "two verdicts may be harmonized by concluding that the jury found that [Sivak] was guilty as an aider and abettor[,] ... it is also conceivable that all twelve jurors were convinced beyond a reasonable doubt that [Sivak] played some role, either as the

shooter or as an aider and abettor, without ascertaining exactly which role. We have no way of knowing, because these alternatives ... are rationally consistent with the jury's verdict in th[is] case." *Santamaria,* 133 F.3d at 1246. By convicting Sivak on count three, the jury determined that either Sivak or Bainbridge committed a murder "in the perpetration of, or attempt to perpetrate robbery," and, to the extent that it found that Bainbridge committed the murder, that Sivak "aid[ed] and abet[ted] in its commission." By acquitting Sivak on count two, the jury found reasonable doubt as to whether Sivak or Bainbridge committed a "willful, deliberate and premeditated killing," or, to the extent it found that Bainbridge committed a "willful, deliberate and premeditated killing," that there was reasonable doubt whether Sivak aided and abetted that crime. In other words, there are numerous "rational conclusion[s] that can be drawn from the ... jury's verdict," and we are therefore unable to conclude that the jury found that Bainbridge, not Sivak, committed the murder. *Id.* Sivak's argument rests entirely on impermissible "guesswork," "conjecture," and "speculation." *Yeager,* 129 S. Ct. at 2368.

....

... The jury could have reached one of the following conclusions under the jury instructions: (1) Sivak did not intend to kill Wilson (and thus did not act willfully, deliberately, or with premeditation); (2) even if Sivak intended to kill Wilson, he did not form this intent to kill *prior to* killing her (and thus did not act deliberately or with premeditation); or (3) even if Sivak formed an intent to kill prior to killing Wilson, he did not *reflect on* this intention (and thus did not act with premeditation). If we take into account the court's aiding and abetting instruction, the number of possible conclusions is multiplied: if the jury concluded that Bainbridge committed the murder, it could have acquitted Sivak of aiding and abetting because (4) Bainbridge did not act intentionally, (5) Bainbridge did not form an intent prior to acting, (6) Bainbridge did not reflect on his intent, or (7), even if Bainbridge did commit a premeditated murder, Sivak did not aid and abet the murder.

Viewing the record with "realism and rationality," *Ashe,* 397 U.S. at 444, 90 S. Ct. 1189, we must conclude that there is "more than one rational conclusion that can be drawn from the ... jury's verdict" of acquittal. *Santamaria,* 133 F.3d at 1246. We have no way of knowing which of these seven conclusions the jury actually reached. Accordingly, we agree with the district court's conclusion that "Sivak has not established that the [sentencing judge's] finding of specific intent 'was actually decided in his favor'" and "[t]he trial court was free to conclude during the subsequent penalty phase, based on all of the evidence before it, that Sivak intended to kill Wilson." (Quoting *Schiro,* 510 U.S. at 236, 114 S. Ct. 783.)

*Sivak v. Hardison*, 658 F.3d 898, 919-21 (9th Cir. 2011) (alterations in original) (footnotes omitted). Petitioner's current double jeopardy argument with respect to his fixed life sentence fails for the same reasons.

Therefore, Petitioner has not shown actual innocence to excuse the procedural default of his resentencing claims.

**4.      Conclusion**

For the reasons set forth above, all of Petitioner's resentencing claims will be dismissed. Because the Court will vacate its previous dismissal of Petitioner's guilt-phase claims, those claims are now the only ones remaining in this case.

## ORDER

**IT IS ORDERED:**

1.      The Court's conditional grant of Respondent's Motion for Summary Dismissal with respect to Petitioner's resentencing claims (Dkt. 82) is CONFIRMED. All of Petitioner's resentencing claims are DISMISSED with prejudice as procedurally defaulted.

**MEMORANDUM DECISION AND ORDER - 18**

2.      Petitioner's Motion for Court to Rescind its Memorandum Decision and Order dated August 29, 2017, Based on False Data and Perjured Presentations (Dkt. 83) is DENIED as frivolous.

3.      Petitioner's Request for Hearing (Dkt. 88) is DENIED.

4.      Petitioner's Motion to Sanction Respondent (Dkt. 91) is DENIED as frivolous.

5.      Petitioner's Motion for Restraining Order (Dkt. 96) is DENIED.

6.      Petitioner's Motion to Allow Other Issues Previously Denied to Proceed (Dkt. 101) is GRANTED to the extent that the Court VACATES its previous dismissal of Petitioner's guilt-phase claims. The Court's previous dismissal of (1) Petitioner's claim challenging his now-vacated death sentence, (2) Petitioner's civil rights claims, and (3) Petitioner's "claim" that he might have other potential claims, is not affected by this Order. *See* Dkt. 13 at 9 n.3, 12-13.

7.      Petitioner's Request for Investigation Relevant to Case (Dkt. 110) is DENIED.

8.      Within 60 days after entry of this Order, Respondent must file an answer and brief raising any procedural defenses to Petitioner's guilt-phase claims, which are the only claims remaining at this point.[4] A separate motion for

---

[4] Petitioner appears to raise guilt-phase arguments in each (or in certain sub-claims of each) of the following claims: 1-18, 20-21, 25-27, and 29-34. To the extent that portions of any of these claims also include a challenge to Petitioner's fixed life sentence or to his now-vacated death sentence, Respondent need not substantially discuss them; rather, in the answer and brief, Respondent may simply note the portions of these claims that have already been dismissed and provide a citation to the record.

summary dismissal based on procedural defenses will not be required. If Respondent chooses not to raise any procedural defenses, he must so notify the Court within 60 days after entry of this Order. If Respondent does not raise procedural defenses, or if some of Petitioner's guilt-phase claims survive such defenses, the Court will then set a briefing schedule on the merits of the remaining claims.

9.  Within 28 days after service of Respondent's answer and brief as to Petitioner's guilt-phase claims, Petitioner must file a reply to that answer and brief. Failure to file a reply may result in dismissal with prejudice, without further notice, for failure to prosecute or failure to comply with a Court order. *See* Fed. R. Civ. P. 41(b); Rule 12 of the Rules Governing Section 2254 Cases ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.").

10. Respondent has the option of filing a sur-reply, in support of the answer and brief as to Petitioner's guilt-phase claims, within 14 days after service of Petitioner's reply.

11. Other than the briefing described above with respect to Petitioner's guilt-phase claims, no party may file anything further in this case until the Court resolves those claims. Violations of this or any other Court Order may lead to sanctions, up to and including dismissal or default judgment. If the Court

determines that further briefing or an evidentiary hearing is warranted, it will issue a sua sponte order accordingly.

DATED: September 27, 2018

B. Lynn Winmill
Chief U.S. District Court Judge