UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LACEY MARK SIVAK,<br><br>    Petitioner,<br><br>v.<br><br>JAY CHRISTENSEN,<br><br>    Respondent. | Case No. 1:16-cv-00189-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is a Petition for Writ of Habeas Corpus (and a clarification), filed by Idaho prisoner Lacey Mark Sivak ("Petitioner" or "Sivak"), challenging Petitioner's Ada County conviction of first-degree murder. *See* Dkt. 2, 10. The Petition is now fully briefed, including briefing submitted by amicus counsel, and is ripe for adjudication.[1]

Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, and for the reasons explained below, the Court enters the following Order denying habeas corpus relief.

---

[1] The Court takes judicial notice of the records from Petitioner's state court proceedings. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

MEMORANDUM DECISION AND ORDER - 1

## INTRODUCTION

The parties are familiar with the labyrinthian procedural history of Petitioner's state and federal litigation surrounding his murder conviction, and that history will not be repeated here. It is enough to note that, in the instant case, all of Petitioner's claims have been dismissed except for Claim 29(g) and (t).

Given the vague and conclusory nature of this claim as presented in the Petition, the Court has construed the claim to the same extent the claim was presented in state court. *See* Dkt. 236 at 14–15. That is, Claim 29(g) and (t) is a combined claim that prescription drugs rendered Petitioner incompetent to stand trial. *State's Lodging F-51* at 116. The Court will refer to this claim as the "incompetency claim."

Petitioner raised his incompetency claim in state court in a petition for post-conviction relief. He argued that the prescription medications he was taking during trial and sentencing caused "mood alteration of petitioner, making him unable to understand and participate in the trial proceedings." *State's Lodging E-35* at 62. The trial court denied the claim, *id*. at 109–110, and the Idaho Supreme Court affirmed, *Sivak v. State (Sivak II)*, 731 P.2d 192, 208–09 (Idaho 1986).

For the reasons that follow, the Court concludes that Petitioner is not entitled to federal habeas relief on his incompetency claim.

## PETITION FOR INJUNCTION

Before the Court considers Petitioner's incompetency claim, it must first address Petitioner's "Petition for Injunction to Protect [Petitioner's] Files." *See* Dkt. 269. In that filing, Petitioner complains of the alleged theft of his legal materials by prison officials. He asks the Court to order the return of all such files.

Petitioner's allegations that prison officials have stolen or wrongfully confiscated his legal materials are—once again—not supported by admissible evidence. *See, e.g.,* Dkt. 236 at 2–3 ("Petitioner has repeatedly made baseless accusations against Respondent's counsel and state employees, contending that he is being denied access to his legal materials. The Court has repeatedly rejected these contentions as unsupported by the evidence, and Petitioner has been warned that making such frivolous and malicious accusations could result in sanctions, up to and including dismissal."). Accordingly, the Court will deny Petitioner's request for an injunction.

The Court will now consider Petitioner's incompetency claim on the merits.

## HABEAS CORPUS STANDARDS OF LAW

A federal court may grant habeas corpus relief when it determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas relief is further limited by § 2254(d), as amended by the Anti-

terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief must be denied unless the state court's adjudication of the petitioner's claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The term "unreasonable" in § 2254(d) is reserved for "extreme malfunctions in the state criminal justice system," not for "ordinary error" or even for cases "where the petitioner offers a strong case for relief." *Mays v. Hines*, 592 U.S. 385, 391 (2021) (per curiam) (internal quotation marks omitted). Accordingly, a federal court reviewing a state court's adjudication of a claim on the merits "must carefully consider all the reasons and evidence supporting the state court's decision." *Id*. Courts are not permitted "to essentially evaluate the merits *de novo* by omitting inconvenient details from its analysis." *Id*. at 392 (internal quotation marks and alteration omitted). Instead, "[d]eciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact requires the federal habeas court to train its

attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and to give appropriate deference to that decision." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (internal quotation marks and citations omitted).

When a petitioner contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S. 415, 426 (2014) (emphasis omitted).

The AEDPA standard is extraordinarily high, and a federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong. Rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Williams*, 529 U.S. at 411. If there is *any* possibility that fair-minded jurists could disagree on the correctness of the state court's decision, § 2254(d)(1) precludes relief. *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013); *Harrington v. Richter*, 562 U.S. 86, 101–02 (2011). In other words, if one fair-minded jurist could conclude that the state court's decision is reasonable, habeas relief must be denied—even if other fair-minded jurists would disagree.

"Clearly established federal law" means the governing legal principles set forth in the holdings—not the dicta—of the United States Supreme Court, as of the time the state court rendered its decision. *Williams*, 529 U.S. at 412. The habeas statute does not require an *identical* factual pattern before a legal rule must be applied. Rather, state courts must reasonably apply the rules squarely established by the Supreme Court's holdings to the facts of each case. *See White*, 572 U.S. at 427.

A federal habeas court "may not overrule a state court for … holding a view different from its own" when the precedent from the Supreme Court "is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003). Although circuit

precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent, *Duhaime v. Ducharme*, 200 F.3d 597, 600–01 (9th Cir. 2000), a federal court may not use circuit law to refine or sharpen a general principle of Supreme Court habeas corpus jurisprudence into a specific legal rule that the Supreme Court itself has not announced, *Lopez v. Smith*, 574 U.S. 1, 7 (2014).

If no Supreme Court decision has confronted the specific question presented by a state prisoner's federal habeas petition—that is, if the circumstances of a petitioner's case are only generally similar to the Supreme Court's precedents—then the state court's decision cannot be "contrary to" any holding from the Supreme Court. *Woods v. Donald*, 575 U.S. 312, 317 (2015) (per curiam). By the same token, a state court cannot unreasonably apply established federal law that does not exist. *See, e.g., Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Therefore, if (1) a claim was adjudicated on the merits in state court, and (2) the underlying factual determinations of the state court were not unreasonable, then evidence that was not presented to the state court cannot be introduced on federal habeas review. *See Murray v. Schriro*, 745 F.3d 984, 999–

1000 (9th Cir. 2014) ("After *Pinholster*, a federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2).").

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Instead, state court factual findings are presumed to be correct and are binding on the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Kirkpatrick v. Chappell*, 950 F.3d 1118, 1131 (9th Cir. 2020) (holding that § 2254(e)(1) "appears to apply to all factual determinations made by state courts"). "If reasonable minds reviewing the record might disagree about the finding in question," the finding is not unreasonable under § 2254(d)(2). *Pizzuto v. Yordy*, 947 F.3d 510, 530 (9th Cir. 2019) (internal quotation marks and alterations omitted).

# DISCUSSION

For the reasons discussed below, Petitioner's incompetency claim fails on the merits under AEDPA.

## 1.     Background

Under 28 U.S.C. § 2254(e)(1), the following facts of Petitioner's case, as described by the Idaho Supreme Court, are presumed correct, absent clear and convincing evidence to the contrary:

> On April 6, 1981, Dixie Wilson, an attendant at a [self-service] gas station, was discovered near death by a customer. She had been stabbed numerous times and shot several times. Evidence indicated she had also been sexually molested. She later died from her wounds.
>
> Witnesses saw two men inside the station with Wilson shortly before the murder, one they identified as Randall Bainbridge. [Sivak] and Bainbridge were seen together before and after the killing.
>
> [Sivak] admitted being present during the robbery and murder, but claimed he was merely an innocent bystander. He claimed he did not participate in the robbery and murder and did not carry a firearm. However, [Sivak's] fingerprint was found on the murder weapon.
>
> Evidence indicated [Sivak] had previously worked at the station, was known to the victim, had expressed animosity toward her, and had called to inquire who would be on duty at the station on April 6, 1981. The gun used in the attack was found in a storage shed rented by [Sivak].

*State v. Sivak (Sivak I)*, 674 P.2d 396, 398 (Idaho 1983).

The jury found Petitioner guilty, and he was initially sentenced to death. Following a series of reversals and remands, as well as a grant of federal habeas relief as to his death sentence, Petitioner ultimately was resentenced to fixed life imprisonment.

**2.      Factual Basis of Petitioner's Incompetency Claim**

During trial and at sentencing, Petitioner was taking (1) a form of aspirin called Synalgos, and (2) an NSAID[2] called Zomax. These pain medications were prescribed for Petitioner by jail medical personnel. *State's Lodging E-48* at 115–17.

At the evidentiary hearing in state court, Petitioner testified that these drugs had made his mind "fuzzy," as if he were "lightheaded or in a dream," and that he felt that his "surroundings … [we]ren't real." *State's Lodging E-49* at 208. Petitioner contended he had trouble remembering things and that the pain relievers "slowed down [his] mind":

> Q.      Were you able to understand, in this condition of the surroundings being unreal and so on, … [w]ere you aware that there was a trial going on?
>
> A.      Yes, I was.
>
> Q.      Were you aware that you were the defendant in the trial?

---

[2] NSAID stands for "non-steroidal anti-inflammatory drug." This category of pain relievers includes drugs like ibuprofen and naproxen.

MEMORANDUM DECISION AND ORDER - 10

> A.  Yes, I was.
>
> Q.  Were you able to—did you know how to eat and how to walk and things like that?
>
> A.  Yes.
>
> Q.  What did the medication prevent you from doing during the trial?
>
> A.  It—what it did, it slowed down the mind where—I could hear what was going on and reply and everything else, but the mind—my mind was slowed down to the point where it was just like you were in a big dream. And just sit and watch everything go on around you.
>
> Q.  Did you try at any time during your trial to remember things that had happened and have trouble remembering?
>
> A.  Yes.
>
> Q.  Did that affect your ability to help out your attorneys with your defense at all, do you think?
>
> A.  I feel it did. As a matter of fact, I recall very little of what went on during the trial. Only from my notes do I have any—do I have a clear recollection of what went on or anything else.

*Id*. at 209–10.

Petitioner's defense counsel testified that Petitioner's affect during trial "was so flat as to be bizarre." *State's Lodging E-48* at 66. Petitioner was "completely unemotional about his circumstance, the fact that he may get put to death, about the killing, about the trial. He just showed absolutely no emotion at all, which

MEMORANDUM DECISION AND ORDER - 11

[defense counsel] thought was extremely bizarre for a person in [Petitioner's] shoes." *Id*. at 66–67.

During trial, defense counsel and Petitioner discussed the proceedings frequently, including what Petitioner would say if he were to testify and how Petitioner's unemotional affect might hurt his chances with the jury. According to counsel:

> Well, when we were going over what he was going to testify to, his affect when he was talking about the woman bleeding to death and getting stabbed 20 times and shot five times was about the same as when he was talking about eating a piece of pie with his mother.
>
> And we told him that the jurors would probably be horrified to listen to him testify about such a thing with that kind of lack of emotion in it.
>
> And so we were encouraging him to show emotion. He told us that it was real hard for him, that he is the type of person that has difficulty expressing emotion to other people.

*State's Lodging E-49* at 326. Notwithstanding Petitioner's "bizarre" affect and lack of emotion, defense counsel acknowledged that he and Petitioner could communicate with and understand one another. *State's Lodging E-48* at 90–91.

Petitioner's sister also testified at the evidentiary hearing. She stated that Petitioner "looked like he was in a daze" and "wasn't really aware of what was going on." *State's Lodging E-49* at 188. She testified that "it seemed like he wouldn't notice people or, you know, notice really what he was doing." *Id*.

In contrast, however, one of the doctors who had treated Petitioner during trial testified that Petitioner never raised any complaint about side effects from taking the pain medications, nor did the doctor observe any such side effects. *State's Lodging E-48* at 125. Although it was "possible" for Synalgos and Zomax "to produce reactions … of dizziness [and] drowsiness," the doctor explained that these side effects were uncommon. *Id*. at 118, 124. In fact, "one of the reasons those two drugs were selected" to treat Petitioner was because "the effects are pretty minimal." *Id*. at 124.

A physician's assistant who treated Petitioner during the trial also testified about the pain medications Petitioner had been taking. *State's Lodging E-49* at 266. According to the physician's assistant, Petitioner did not complain of any side effects while he was taking Synalgos and Zomax. *Id*. at 276.

In addition, Petitioner acknowledged at the evidentiary hearing that, at the time he alleged to have been under the influence of these medications, he wrote various letters to his defense counsel and others, drafted a witness list and various subpoenas, and discussed the documents with counsel. *State's Lodging E-49* at 235–38. Petitioner also testified that he told his attorneys everything he knew about the case, that he discussed his defense with them, and that he talked about aspects of the case with his attorneys on a daily basis. *Id*. at 240–41.

MEMORANDUM DECISION AND ORDER - 13

3.  **Clearly Established Law**

Due process requires that a criminal defendant be competent to stand trial. A defendant is competent if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and if he has "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (internal quotation marks omitted) *see also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."). "Requiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel." *Godinez v. Moran*, 509 U.S. 389, 402 (1993).

Relevant factors in a competency determination include "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *Drope*, 420 U.S. at 180. The question of competency "is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Id*. Therefore, "[e]ven when a defendant is competent at [one point in the proceedings], a trial court must always be alert to circumstances suggesting a

change that would render the accused unable to meet the standards of competence to stand trial." *Id*. at 181.

### 4. State Court Decision

Petitioner asserted in state court that he was incompetent to stand trial because of the pain medications he was taking and, as a result, his conviction was invalid. After an evidentiary hearing, the trial court specifically found as follows:

> … [D]uring part of the petitioner's trial and sentencing hearing he was required to take medication for pain which was dispensed and administered by the State of Idaho. Such medication did not result in any mind or mood alteration of the petitioner. He was able to understand and participate in the entire trial proceedings. As a result[,] his convictions and sentences did not violate his rights to a fair trial, and to confront the witnesses against him, as guaranteed by the United States Constitution, the Idaho Constitution, and court decisions relating thereto.

*State's Lodging E-35* at 109–110. Accordingly, the trial court rejected Petitioner's incompetency claim.

The Idaho Supreme Court affirmed, concluding that Petitioner's contention that he was incompetent was "not uncontradicted":

> In fact, the state pointed out that Sivak had the presence of mind during trial to take notes sufficient to provide a clear recollection. Also, a physician who had observed Sivak during the trial testified that he was familiar with the medication prescribed to Sivak and concluded that it would not have produced the type of symptoms that Sivak described.

MEMORANDUM DECISION AND ORDER - 15

*Sivak II*, 731 P.2d at 208–09. The state supreme court held that the lower court judge, "as a fact finder, could have fully believed the state's evidence [of competence] and completely disbelieved Sivak's evidence [of incompetence]." *Id*. at 209. As a result, the finding of competence was not clearly erroneous, and Petitioner had not established he was incompetent to stand trial.

**5.    In Rejecting Petitioner's Incompetency Claim, the State Court Did Not Unreasonably Apply Clearly Established Supreme Court Precedent or Base its Decision on an Unreasonable Finding of Fact**

In considering Petitioner's claim, the Idaho Supreme Court adopted the trial court's factual findings that the pain medication Petitioner was taking did not cause any mind- or mood-altering side effects, that Petitioner was able to understand the proceedings against him, and that he participated in the entire trial proceedings. *Id*. at 208–09; *see also State's Lodging E-35* at 109–10. Petitioner has not established that these factual findings are unreasonable, nor has he rebutted these findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(d)(2), (e)(1).

The state courts did not credit the testimony that Petitioner was incapable of understanding the proceedings or of assisting counsel in his defense. Such credibility findings are the quintessential type of finding generally left to the trier of fact, who hears the witness's testimony and observes his or her demeanor:

> All aspects of the witness's demeanor including the expression of his countenance, how he sits or stands, whether he is inordinately nervous, his coloration during critical examination, the modulation or pace of his speech

> and other non-verbal communication may convince the observing trial judge that the witness is testifying truthfully or falsely. These same very important factors, however, are entirely unavailable to a reader of the transcript ….

*Penasquitos Village, Inc. v. N.L.R.B.*, 565 F.2d 1074, 1078–79 (9th Cir. 1977). The state courts' findings are not unreasonable under 28 U.S.C. § 2254(d)(2).

In addition, the Idaho Supreme Court reasonably rejected Petitioner's incompetency claim under 28 U.S.C. § 2254(d)(1). That court's determination that Petitioner was competent to stand trial was fully consistent with *Dusky*, *Drope*, and *Godinez*. As a result, Petitioner is not entitled to relief on his incompetency claim under AEDPA.

## CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner is not entitled to habeas relief on his only remaining claim.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Petition for Injunction (Dkt. 269) is DENIED.

2. Claim 29(g) and (t) is DENIED on the merits. Because all other claims have already been dismissed, this entire action is DISMISSED with prejudice.

3. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: May 8, 2024

B. Lynn Winmill
U.S. District Court Judge